**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:25-CV-103-MOC-DCK**

| | | |
|---|---|---|
| **CHRISTOPHER MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Memorandum In Support Of His Social Security Appeal" (Document No. 5) and "Defendant's Brief" (Document No. 6). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that the Commissioner's decision be affirmed.

## BACKGROUND

Plaintiff Christopher Moore ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on an application for disability benefits. (Document No. 1). Plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on or about November 17, 2021, alleging an inability to work due to a disabling condition beginning June 10, 2020. (Transcript of the Record of Proceedings ("Tr.") 168–172 ). Plaintiff later amended his claim, alleging an inability to work due to a disabling condition beginning on or about November 17, 2021. Id. at 189. The Commissioner of Social Security (the "Commissioner" or "Defendant") initially denied Plaintiff's application on April 29, 2022, and

again upon reconsideration on March 29, 2023. (Tr. 17). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> Your condition results in some limitations in your ability to perform work related activities. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information, your age and education in determining how your condition affects your ability to work. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work.

(Tr. 135).

Plaintiff filed a timely written request for a hearing on April 3, 2023. (Tr. 17). On September 28, 2023, Plaintiff appeared and testified at a hearing before Administrative Law Judge Nancy McCoy (the "ALJ"). (Tr. 36–77). In addition, Theodore Sawyer, a vocational expert ("VE"), and Christine Latona, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on December 21, 2023, denying Plaintiff's claim. (Tr. 14–31). On February 20, 2024, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on December 17, 2024. (Tr. 1–6). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1–6).

On February 11, 2025, Plaintiff filed his "Complaint Requesting Review Of An Administrative Decision Under The Social Security Act." (Document No. 1). On March 3, 2025, the undersigned was assigned to this case as the referral Magistrate Judge. (Text-Only Order, Mar. 3, 2025).

Plaintiff's "Memorandum In Support Of His Social Security Appeal" (Document No. 5) was filed May 15, 2025, and "Defendant's Brief" (Document No. 6) was filed

May 28, 2025. On June 11, 2025, Plaintiff filed "Plaintiff's Reply Brief In Support Of His Social Security Appeal." (Document No. 7).

This case is now ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Judge Max O. Cogburn is now appropriate.

## STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the

medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017)). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between November 17, 2021, and the date of the decision.[1] (Tr. 14–31). To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

> listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i–v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 31).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since November 17, 2021, the alleged disability onset date. (Tr. 19). At the second step, the ALJ found that Plaintiff had the following severe impairments: seizure disorder, depression, chronic obstructive pulmonary disease ("COPD"), and obesity.[2] (Tr. 19). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 20–22).

Next, the ALJ assessed Plaintiff's RFC and found that Plaintiff retained the capacity to perform medium work activity, with the following limitations:

> [Plaintiff cannot] tolerate frequent exposure to concentrated fumes, dusts, gases, odors, or pulmonary irritants; no climbing ladders, ropes, or scaffolds; no operation of heavy machinery or occupational driving; no exposure to hazards such as unprotected heights and no

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

> work next to open bodies of water or open flames; no tasks that require the use of sharp blades; [Plaintiff is] able to sustain concentration, persistence or pace to perform simple, repetitive, routine, tasks and to adapt to occasional changes in a routine work setting and duties.

(Tr. 22). In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff has no past relevant work experience. (Tr. 30). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 30–31). Specifically, the VE testified that according to the factors given by the ALJ, occupations Plaintiff could perform included linen room attendant, hand packager, and cleaner. (Tr. 31). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, between November 17, 2021, and the date of the decision, December 21, 2023. (Tr. 31).

On appeal to this Court, Plaintiff alleges the ALJ's decision includes the following errors: (1) the ALJ discounted Plaintiff's treating physician's opinions without providing legally sufficient reasoning, in violation of SSR 96-8p; (2) the ALJ did not account for Plaintiff's limitations with concentration, persistence, or maintaining pace in his RFC assessment; (3) the ALJ's step 5 finding that significant jobs exist in the national economy which Plaintiff can perform is not supported by substantial evidence; and (4) the ALJ failed to explain why the RFC finding from Plaintiff's prior application was absent from the ALJ's RFC assessment here. (Document No. 5). The undersigned will discuss each of these contentions in turn.

### A. The ALJ's Consideration of Dr. Reynolds's Opinion

In the first assignment of error, Plaintiff argues that the ALJ failed to sufficiently consider the opinions of Plaintiff's treating physician, Dr. Reynolds, when determining Plaintiff's RFC. (Document No. 5, pp. 9–13). Plaintiff argues that the ALJ erroneously found Dr. Reynolds's opinions to be unpersuasive and unsupported by the medical record and that the ALJ further erred by failing to provide sufficient explanation for her decision. Id. at 10–13. Specifically, Plaintiff highlights Dr. Reynolds's opinion "that Plaintiff suffers from a seizure disorder, COPD, a brain tumor, and depression with symptoms of headaches, fatigue, weakness, and shortness of breath." Id. at 11. Plaintiff notes that Dr. Reynolds further opined and that the medication managing these conditions causes fatigue, "which would require [Plaintiff] to take additional unscheduled breaks during the workday" and that "[Plaintiff] would be absent from work four or more days per month." Id. Additionally, Plaintiff emphasizes that on or about June 2022, Dr. Reynolds noted that Plaintiff had difficulty concentrating every day and was incapable of completing tasks such as reading or watching television. Id. at 11–12. Plaintiff further notes that Plaintiff's daughter testified that he took more than an hour after a seizure to become "cognizant," and on occasion it would take him longer than that to wake up from his seizures. Id. at 12. Finally, Plaintiff argues that "the ALJ failed to acknowledge or address how the side effects from [Plaintiff's] medications would contribute to his limitations." Id. As such, Plaintiff contends that the ALJ "discounted Dr. Reynolds's opinions, even though the totality of the evidence supports his opined limitations." Id. Further, Plaintiff argues that the ALJ erred by failing to sufficiently "explain why [Dr. Reynolds's] opinion was not adopted," consistent with the requirements of SSR 96-8p. Id.

In response, Defendant argues that the ALJ's assessment of Dr. Reynolds's opinion is supported by "substantial evidence" and that she properly considered and explained the opinion's

supportability and consistency, consistent with 20 C.F.R. § 416.920c(a). (Document No. 6, p. 3–8). Defendant further contends that the ALJ properly explained her findings by describing the inconsistency between Dr. Reynolds's opinion and other "medical evidence, including [Dr. Reynolds's] own treatment notes." Id. at 4 (citing Tr. 29). For example, Defendant highlights that the ALJ found Dr. Reynolds's opinion that Plaintiff would miss four days of work a month inconsistent with Plaintiff's own seizure logs. Id. (citing Tr. 29). Defendant notes that the ALJ reviewed various reports from September 2020, through September 2022, in which Plaintiff claimed to providers that his seizures ranged anywhere from several months to nearly a year apart. Id. at 5 (citing Tr. 25). As such, Defendant argues that the ALJ properly found that Plaintiff's own reports of his seizure activity did not support Dr. Reynolds's opinion. Id.

Defendant further contends that the ALJ properly considered Plaintiff's reported fatigue as a side effect of his medication. Id. at 7. Defendant contends that while Dr. Reynolds listed fatigue as one of Plaintiff's systems in general, Dr. Reynolds did not list fatigue as a side effect associated with any of Plaintiff's medications on the RFC questionnaire. Id. (citing Tr. 988). Further, Defendant argues that throughout the record, Plaintiff repeatedly discussed his medication needs with Dr. Reynolds without complaining of any side effects. Id. at 7. Finally, Defendant highlights the ALJ's finding that the opinions of other providers, including Misbba Khan, M.D. and Anthony Raspanti, M.D. "contradicted Dr. Reynolds's opinion . . . ." Id. at 8.

In his Reply, Plaintiff argues that "the ALJ misconstrued [Plaintiff's] seizure evidence." (Document No. 7, p. 4). In support of this contention, Plaintiff asserts that the ALJ "stated that [Plaintiff] suffered fourteen seizure events from April 2021 to August 2023," when "[i]n fact, [Plaintiff's] seizure log noted twenty-six seizure events from 2020 to 2023." Id. Additionally, Plaintiff's Reply argues that "the ALJ failed to address how the side effects of [Plaintiff's]

medications would contribute to his limitations and affect his ability to engage in sustained work activity." Id. at 5.

The undersigned finds that the ALJ sufficiently considered Dr. Reynolds's opinion in her determination of Plaintiff's RFC. At the outset, the undersigned notes that that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a). "Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions . . . ." Rediford B. v. Kijakazi, 2023 WL 9550461, at *6 (E.D.Va. Nov. 9, 2023). The Fourth Circuit has explained that "[a]lthough the Social Security Administration must ultimately stat[e] the . . . reason or reasons upon which its final decision is based . . . an ALJ need not explain in detail how he evaluate[d] the persuasiveness." Drumgold v. Comm'r of Soc. Sec., 144 F.4th 596, 604–05 (4th Cir. 2025) (citing 20 C.F.R. § 404.1520c(a)) (internal quotation marks omitted). Instead, the ALJ must "evaluate the persuasiveness" of the opinion "by applying a five-factor test," which considers "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors." Id. at 604 (citing 20 C.F.R. § 404.1520c(c)(1)–(5)). While the ALJ must "*consider* all five factors," the ALJ "need not *discuss* any save the first two unless those other factors are dispositive." Id. at 605 (citing 20 C.F.R. § 404.1520c(b)(3)) (emphasis added). "When the ALJ does that by applying the correct factors, [the Court will not remand] the decision unless it is exceptionally clear that the ALJ made a mistake." Id.

Finally, when evaluating the persuasiveness of an opinion, the ALJ must also "offer[] a sufficient rationale in crediting certain evidence and discrediting other evidence." Id. (citing Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 353 (4th Cir. 2023)). While the ALJ must discuss supportability and consistency, "the ALJ need not necessarily use the words

'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors." Todd A. v. Kijakazi, 2021 WL 5348668, at *4 (E.D.Va. Nov. 16, 2021). Additionally, "there is no requirement that an ALJ use any 'magic words' in making findings regarding consistency and supportability." Tyrun W. v. O'Malley, 2024 WL 4349241, at *5 (M.D.N.C. Sept. 30, 2024).

Regarding the first factor that the ALJ must discuss when evaluating the persuasiveness of an opinion, the Fourth Circuit has explained that "[s]upportabililty roughly means the amount of objective medical evidence supporting the medical opinion." Drumgold, 144 F.4th at 606. "Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself." Croft v. Kijakazi, No. 3:22-CV-653-MOC, 2023 WL 4241678, at *6 (W.D.N.C. June 28, 2023) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). For example, a district court held that when an ALJ failed to "examine the extent to which [a doctor's] own treatment notes supported his opinions," the ALJ did not sufficiently address the supportability factor. Rosa M. v. Kijakazi, 2023 WL 9101308, at *7 (D.S.C. Dec. 8, 2023). In Rosa M., "the ALJ merely stated [the doctor's] opinion was 'unsupported' by evidence in the record and proceeded to list evidence mostly attributed to other doctors' treatment notes—treatment notes which are *irrelevant* to whether [the doctor's] opinions are supported by his *own* treatment notes and explanations." Id. (emphasis in original).

Turning to the second factor which the ALJ must discuss, the Fourth Circuit has explained that "consistency roughly means how well the medical opinion lines up with other material in the record." Drumgold, 144 F.4th at 606. "Consistency is an external check that references evidence from other medical and nonmedical sources." Croft, No. 3:22-CV-653-MOC, 2023 WL 4241678, at *5 (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). For example, a district court held that

when an ALJ compared a doctor's "restrictive limitations to other evidence in the record and explained why they did not align," the ALJ "sufficiently explained how this component of the opinion was inconsistent with the broader medical record, as required by 20 C.F.R. § 404.1520c(c)(2)." Joyce C. v. Bisignano, 2026 WL 458564, at *4 (D.Md. Feb. 18, 2026). Additionally, when an ALJ explained how a doctor's opinions were inconsistent with those of other orthopedic doctors, the ALJ was held to have sufficiently considered the consistency factor. See Caldwell v. Comm'r of Soc. Sec., No. 5:21-CV-094-RJC, 2022 WL 3974269, at *4 (W.D.N.C. Aug. 31, 2022).

Here, the ALJ sufficiently considered the persuasiveness of Dr. Reynolds's opinion and sufficiently explained her reasoning. First, the undersigned finds that the ALJ properly considered the supportability of Dr. Reynolds's opinion by comparing Dr. Reynolds's opinions with objective medical evidence in the record. For example, while Dr. Reynolds listed headaches as one of Plaintiff's symptoms, (Tr. 988), the ALJ identified that Plaintiff repeatedly denied headaches during medical appointments throughout the record. (Tr. 25–26). Additionally, while Dr. Reynolds identified shortness of breath as one of Plaintiff's symptoms, the ALJ noted that in 2021 Dr. Reynolds reported "normal" breath sounds and that "pulmonary effort was normal," and in 2022, Plaintiff reported that his COPD symptoms had resolved, such that he no longer required an inhaler. Id. Taken together, the undersigned finds that the ALJ sufficiently considered the supportability of Dr. Reynolds's opinion from objective medical evidence in the record.

The undersigned also finds that the ALJ sufficiently considered the consistency of Dr. Reynolds's opinion. While Dr. Reynolds opined that Plaintiff would be absent from work more than four days per month, the ALJ adequately explained her finding that this opinion was unsupported by the evidence in the record. For example, the ALJ noted that Plaintiff's own seizure

logs "indicate that . . . [Plaintiff] had 26 events in 43 months" and further noted that "not all" of the logs indicated "seizure events but some were feelings or 'almost' seizures." (Tr. 24). In addition to finding that twenty-six events over the course of forty-three months, itself, likely did not support an opinion that Plaintiff would be absent from work more than four times per month, the ALJ also found Plaintiff's reported seizure frequency inconsistent with the overall record. (Tr. 24–26). For example, the ALJ notes that during a 2019 emergency visit, Plaintiff reported "no seizures 'in several years;'" in January of 2020, Plaintiff reported "no seizures since October 2019;" in April 2020, Plaintiff again reported "no seizures;" and in 2023, when Plaintiff attended a consultive exam, "[d]espite logging only one seizure event in 2023 . . . [Plaintiff] reported one to two seizures a month." (Tr. 24, 25, 26). Ultimately, the undersigned finds that the ALJ sufficiently considered the consistency of Dr. Reynolds's opinion in her determination of its persuasiveness and that a "reasonable mind" could find his opinion that Plaintiff would miss more than four days of work per month to be unpersuasive and unsupported by medical evidence. Drumgold, 144 F.4th at 605 ("[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.").

Finally, the undersigned finds that the ALJ did not err by failing to consider the side effects of Plaintiff's seizure medication. While Dr. Reynolds listed fatigue as one of Plaintiff's symptoms and "sedation" as a side effect of Plaintiff's medication in the August 31, 2023 RFC questionnaire (Tr. 988), the record reflects that, despite numerous appointments regarding Plaintiff's medication, Plaintiff reported no such side effects prior to the point in time that Dr. Reynolds completed the Social Security Administration questionnaire. On April 23, 2021, Plaintiff sought a refill of his seizure medication from Dr. Reynolds and reported no side effects from his medication. (Tr. 264). On April 2, 2022, Plaintiff again met with Dr. Reynolds and discussed his medication, without

complaining of side effects, and Dr. Reynolds's notes from that visit list symptoms which do not include fatigue. (Tr. 352). Finally, on August 14, 2023, Plaintiff again requested a refill of his seizure medication from Dr. Reynolds, and Dr. Reynolds, again, noted a list of Plaintiff's symptoms which did not include fatigue. (Tr. 998). The undersigned notes that the Fourth Circuit has explained that the ALJ need not "specifically refer to every piece of evidence in [her] decision" and concludes that substantial evidence exists in the record supporting her finding that Dr. Reynolds's opinions, including with regard to medication side effects, are unpersuasive. Reid v. Comm'r Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). Ultimately, Plaintiff's arguments regarding Dr. Reynolds ask this Court to re-weigh the evidence in the record, which the Court cannot do. As such, the undersigned concludes that the ALJ did not err in her assessment of Dr. Reynolds's opinion.

### B. The ALJ's Consideration of Plaintiff's Concentration, Persistence, and Pace Limitations

Next, Plaintiff contends the ALJ failed to account for his moderate limitations in concentration, persistence, and pace and failed to explain why such limitations were unnecessary. (Document No. 5, pp. 13–19). Plaintiff argues that the ALJ's determination that Plaintiff can perform simple, repetitive tasks fails to account for "[Plaintiff's] moderate concentration, persistence, and pace limitations," specifically with respect to "his ability to stay on task." Id. at 17. Plaintiff argues that the ALJ's stated reasoning for this moderate limitation disregards his daughter's testimony, which claims Plaintiff needs help remembering to update his seizure log and that she lives with Plaintiff to assist with household tasks such as cooking and cleaning. Id. Plaintiff also highlights his own testimony, specifically that he struggles to watch a two-hour movie or carry on a good conversation because of his issues concentrating and paying attention. Id. Additionally, Plaintiff notes that the VE testified that being off-task for more than ten percent

of the workday would prevent an individual from being employed. Id. Plaintiff ultimately contends that the ALJ erred by failing to "explain why there is no limitation [with regard to Plaintiff's ability to stay on task] in the RFC assessment," constituting a failure to "form a clear and logical bridge from the evidence to the RFC finding." Id. at 19.

In response, Defendant contends that the RFC properly accommodates Plaintiff's moderate limitations in concentration, persistence, and pace and further argues that the "ALJ adequately articulated the evidentiary basis for this assessment." (Document No. 6, p. 9). Defendant argues that the ALJ noted "that Plaintiff's mental status examination findings were largely normal, including intact memory and organized thought process." Id. Additionally, Defendant highlights the ALJ's discussion of Dr. Walter McNulty's opinion that Plaintiff could sustain attention necessary to perform simple, repetitive, tasks, and tolerate the stress and pressures of day-to-day work activity. Id. Defendant further argues that the ALJ acknowledged the VE's testimony in response to Plaintiff's counsel about a worker who is off task for more than 10% of the workday but found that objective evidence did not support the applicability of such a limitation to the Plaintiff. Id.

In Reply, Plaintiff argues that the ALJ "failed to provide a detailed explanation of what evidence was considered to account for Moore's moderate limitation in concentration, persistence, or pace." (Document No. 7, p. 2). Plaintiff further contends that the ALJ's failure to explain "what evidence she considered" constitutes a failure to build the requisite "logical bridge from the evidence to her conclusion that the Fourth Circuit requires." Id. (citing Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)).

The undersigned finds that the ALJ sufficiently considered Plaintiff's concentration, persistence, and pace limitations and that she sufficiently connected the evidence to her

conclusions. "Concentration, persistence, or pace" is defined as "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C.3. The Fourth Circuit has explained that, regarding this inquiry, "the ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). In other words, "Mascio held that the ability to perform simple work is not the same as having the ability to *stay on task* during a workday, which is the limitation that would account for a claimant's impairment in concentration, persistence, or pace." Minor v. Berryhill, 2018 WL 1305181, at *5 (D.S.C. Feb. 20, 2018) (citing Mascio, 780 F.3d at 638) (emphasis in original). The Mascio court ultimately remanded because the ALJ provided "no explanation" at all regarding whether the claimant's mental limitation affected her RFC. Mascio, 780 F.3d at 638.

Alternatively, the Fourth Circuit affirmed an ALJ's decision where "the ALJ discussed in detail the psychological evaluations performed by the SSA psychological consultants . . . and sufficiently explained why the mental limitation to simple, routine, repetitive tasks accounted for [the plaintiff's] . . . moderate limitations in her concentration, persistence or pace . . . ." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). The court explained that the Fourth Circuit in Mascio did not impose a *per se* rule that remand is required where "the ALJ fail[s] to specifically account for [the plaintiff's] difficulties with regard to concentration, persistence and pace," but instead allows courts to affirm such decisions where the ALJ explains why a restriction greater than simple, routine, repetitive tasks is not warranted. Id.

Here, the undersigned concludes that the ALJ sufficiently explained her conclusion that Plaintiff is able to sustain concentration, persistence or pace to perform simple, repetitive, routine tasks. The undersigned also finds that this case differs from Mascio, in which the ALJ gave "no

explanation" regarding the plaintiff's concentration, persistence, or pace limitation, Mascio, 780 F.3d at 638, and is more similar to Shinaberry in which the ALJ "sufficiently explained" her conclusions, Shinaberry, 952 F.3d at 121. The undersigned notes that the ALJ supported her conclusion by explaining the findings of Dr. McNulty, who found that Plaintiff "would be able to understand, retain, and follow simple instructions," that "his attention and memory functioning appear consistent with other intellectual abilities," and that "he appears able to sustain attention to perform simple, repetitive tasks." (Tr. 29). Dr. McNulty's specific finding that Plaintiff possesses the ability to "sustain attention" supports the ALJ's determination that Plaintiff is not only able to perform simple tasks but is also able to *stay on task*. Id. The undersigned is ultimately persuaded that the ALJ conducted a thorough review of the record and incorporated both subjective and objective evidence such that the Court would not be "left to guess" as to the basis for her conclusion. Mascio, 780 F.3d at 637. Therefore, the undersigned concludes that the ALJ's findings and the RFC are sufficiently explained and supported by substantial evidence in the record.

### C. Substantial Evidence Supporting the ALJ's Finding that Plaintiff Can Perform a Significant Number of Jobs in the National Economy

Plaintiff next argues that the ALJ erred by failing to address a purported conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). (Document No. 5, p. 20). Specifically, while the VE testified that Plaintiff could perform the job of linen room attendant, Plaintiff contends that this job requires a level 3 reasoning, which is in conflict with the limitations the ALJ included in the RFC. Id. at 20. Plaintiff argues that the job of linen room attendant is beyond Plaintiff's RFC because "[l]evel 3 reasoning requires an individual to . . . [d]eal with problems involving several concrete variables in or from standardized situations," which Plaintiff

contends is inconsistent with his limitation to "simple, repetitive, routine tasks." Id. (internal citations omitted).

In response, Defendant argues that notwithstanding this potential inconsistency, substantial evidence supports the ALJ's finding that Plaintiff's RFC would allow him to perform a significant number of jobs in the national economy. (Document No. 6, p. 12). Defendant contends that "even assuming that [Plaintiff's RFC is inconsistent with an ability to perform the job of linen room attendant], Plaintiff fails to demonstrate harmful error" because "Plaintiff does not dispute that he could perform the hand packager and cleaner occupations" given his RFC "or that a total of 225,000 of those jobs exist in the national economy." Id. at 13. Defendant argues that the uncontested existence of 225,000 jobs which Plaintiff could perform "far exceeds the number found significant by the Fourth Circuit." Id.

Plaintiff does not revisit this argument in his Reply.

Here, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff could perform a significant number of jobs in the national economy. An ALJ may properly find that "[w]ork exists in the national economy when there is a significant number of jobs (**in one or more occupations**) having requirements which [the plaintiff] [is] able to meet . . . ." 20 C.F.R. § 404.1566(b) (emphasis added); see also Cole v. Colvin, 2014 WL 4060145, at *4 (M.D.N.C. Aug. 14, 2014) ("[T]he ALJ only needs to identify one job that [the plaintiff] can perform."). "[I]dentification of even one occupation appropriate for [the plaintiff] fulfills the Commissioner's burden at the fifth step of the process, so long as the occupation is available in significant numbers in the economy." Kennerly v. Colvin, 2015 WL 9672913, at *13 (S.D.W.Va. Dec. 8, 2015), report and recommendation adopted, 2016 WL 93867 (S.D.W.Va. Jan. 7, 2016). The Fourth Circuit has found the existence of as few as 81,000 jobs nationally to support a finding

of substantial evidence. McCall v. Saul, 844 F.App'x 680, 681 (4th Cir. 2021); see also Ronnie K. v. O'Malley, 2024 WL 3695205, at *12 (M.D.N.C. Aug. 7, 2024) (holding 70,000 jobs to be a significant number of jobs in the national economy).

Here, the VE testified that Plaintiff could work as a linen room attendant, a hand packager, and a cleaner. (Tr. 31). Plaintiff makes no argument that the jobs of hand packager or cleaner, which have 125,000 and 100,000 national jobs, respectively, are beyond his RFC. (Tr. 31). Nor does Plaintiff contest the number of national jobs in these positions. Therefore, "[b]ecause Plaintiff can perform at least one job that exists in significant numbers in the national economy, the ALJ properly concluded that Plaintiff is not disabled under the Act." Richardson v. Berryhill, No. 5:16-CV-173-RJC-DSC, 2019 WL 1354042, at *4 (W.D.N.C. Mar. 26, 2019).

**D. The ALJ sufficiently explained why Plaintiff's current RFC assessment is less restrictive than a prior RFC assessment**

Finally, Plaintiff argues that the ALJ did not sufficiently address Plaintiff's prior 2021 application. (Document No. 5, pp. 21–24). Plaintiff contends that under Acquiescence Ruling ("AR") 00-1(4), adjudicators must consider prior determinations as evidence in a subsequent claim. Id. at 21–22. Plaintiff notes that the 2021 RFC assessment found that Plaintiff had a greater RFC and would have only one partial absence per month for being tardy or leaving early. Id. at 23. Plaintiff contends the ALJ erred in her instant RFC assessment because she makes no reference to this prior (lesser) limitation in the instant RFC assessment. Id.

In response, Defendant argues that the ALJ sufficiently accounted for the RFC by explaining "that she 'has considered the residual functional capacity set forth previously issued in January 2021 pursuant to Albright v. Commissioner of Social Security Administration, 174 F.3d 473 (4th Cir. 1999).'" (Document No. 6, p. 14) (quoting Tr. 27). Defendant also specifically highlights that the ALJ stated "the current evidence record reflects new and material evidence that

warrants a **greater** degree of functional limitation than previously found with regard to obesity and depression." Id. at 14 (emphasis added). Defendant notes that the ALJ has therefore found Plaintiff more limited than before, restricting him to medium work as opposed to work at all exertion levels as found in the previous decision. Id. Defendant further argues that an ALJ is not required to explicitly discuss each factor or state the weight given to a previous finding to comply with AR 00-1(4)). Id. (citing Melvin v. Astrue, 602 F. Supp. 2d 694, 702 (E.D.N.C. 2009)). Finally, Defendant argues that, in any event, even if the ALJ did err in not considering her previous decision, such error is harmless because the prior finding that Plaintiff would previously be likely to have one partial absence from work per month would still allow him to perform all of the jobs identified at Step Five in the instant evaluation. Id.

Plaintiff does not revisit this argument in his Reply.

Here, the undersigned finds that any potential error associated with the ALJ's cursory reference to her prior decision would constitute a harmless error and is thus not a basis for remand. "As a general proposition, [the Fourth Circuit applies] the harmless error doctrine in reviewing a decision of the Commissioner denying a benefits claim." Keller v. Berryhill, 754 F. App'x 193, 199 (4th Cir. 2018) (per curiam) (citing Patterson v. Comm'r of Soc Sec. Admin., 846 F.3d 656, 658 (4th Cir. 2017)). "Harmless error results when there is a showing that evidence, even when properly considered by the ALJ, would not result in a different decision." Mullinax v. Colvin, No. 5:13-CV-169-GCM, 2014 WL 6997766, at *4 (W.D.N.C. Dec. 10, 2014) (citing Camp v. Massanari, 22 F.App'x 311 (4th Cir. 2001)). "A court should not remand a disability case if it is highly unlikely a remand to the Commissioner would change his finding of nondisability or if the Commissioner's decision is overwhelmingly supported by the record." Martin v. Saul, 2020 WL 5105175, at *10 (D.S.C. Aug. 31, 2020) (citing Tanner v. Comm'r of Soc. Sec., 602 F.App'x 95,

101 (4th Cir. 2015)). For example, an ALJ's failure to properly consider a prior RFC determination may be considered harmless error when "all of the jobs identified were consistent with the prior RFC that Plaintiff contends should have been adopted or addressed . . . ." Kelly S. v. O'Malley, 2024 WL 3992677, at *6 (M.D.N.C. Aug. 29, 2024).

The undersigned finds that the ALJ's arguably cursory treatment of the 2021 decision's RFC work restriction, if erroneous, amounts to harmless error. In reviewing the ALJ's decision, the undersigned notes that the ALJ found Plaintiff to be more physically limited in the instant assessment than the previous assessment. (Tr. 27, 86). Thus, the undersigned ultimately concludes that any jobs which are consistent with Plaintiff's current, more restrictive, RFC could be performed by a person with Plaintiff's 2021, less restrictive, RFC. The undersigned therefore finds that remand on this issue would have no impact on the ALJ's conclusion.

## CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: the Commissioner's determination be **AFFIRMED**.

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact,

conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315–16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 208). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: September 2, 2026

David C. Keesler
United States Magistrate Judge